**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **MAWIA MOHAMED ELJACK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 2:11-CV-1854-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION**

Plaintiff Mawia Mohamed Eljack ("Mr. Eljack") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), who denied his application for Supplemental Security Income ("SSI"). Mr. Eljack timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[1]

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Eljack was a 49-year-old male at the time of his hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 15, 21). He has at least a high school education. (Tr. 22). His past work experiences include employment as a security guard. (Tr. 21). Mr. Eljack claims he became disabled on December 4, 2007, due to diabetes, high blood pressure, swelling of his joints, pain, and neuropathy. (Tr. 72, 127). His last period of work ended on December 14, 2007. (Tr. 17).

Mr. Eljack protectively filed an application for SSI on January 30, 2008. (Tr. 111–13). His claims were denied by the Regional Commissioner on April 3, 2008. (Tr. 66–70). Mr. Eljack timely requested a hearing (Tr. 71), which was held on October 27, 2009, in Birmingham, Alabama. (Tr. 15). The ALJ concluded that Mr. Eljack was not disabled and issued his written decision denying his applications for benefits on December 2, 2009. (Tr. 15–23). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Mr. Eljack's request for review on April 8, 2011. (Tr. 1–5).

Mr. Eljack filed his Complaint on June 1, 2011, which asks this court to review the ALJ's decision. (Doc. 1). This court has carefully considered the record and remands the decision of the ALJ for further findings consistent with this opinion.

## **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

   (1)   whether the claimant is currently employed;
   (2)   whether the claimant has a severe impairment;
   (3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

      (4)     whether the claimant can perform her past work; and
      (5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At step one, the ALJ found that Mr. Eljack has not engaged in substantial gainful activity since December 14, 2007. (Tr. 17). At step two, he found that the medical evidence supported a finding that Mr. Eljack's impairments of diabetic neuropathy, edema, diabetes mellitus II were considered "severe" according to 20 C.F.R. § 416.920(c). (Tr. 17).[3] At step three, the ALJ held that Mr. Eljack's

---

[3] The ALJ also evaluated the diagnosis of morbid obesity that was present in Mr. Eljack's medical records, but found that it did not constitute a "severe" impairments for the purposes of his disability claims because it "causes no more than a minimal limitation in [Mr.

medically determinable impairments, in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I of the Social Security Regulations. (Tr. 19). At step four, the ALJ considered the entire record and found that Mr. Eljack retained the residual functional capacity ("RFC") to perform a modified range of sedentary work[4] and determined that he was "limited to occasional pushing and pulling bilaterally, and occasional stooping, kneeling, crouching, and crawling." (Tr. 20). The ALJ then found that Mr. Eljack could no longer perform his past relevant work (as a security guard) because his sedentary RFC no longer allows for him to perform "light and semiskilled" work. (Tr. 21). Finally, at step five, the ALJ used the Medical-Vocational Guidelines (hereinafter "grids") at 20 C.F.R. Part 404, Subpart P, Appendix 2, as a framework for decisionmaking, and considering the grids along with the testimony of the vocational expert, he concluded that Mr. Eljack could perform other jobs existing in significant numbers in the national economy and was therefore "not disabled." (Tr. 22–23). Accordingly, the ALJ denied Mr. Eljack's SSI application. (Tr. 23).

---

Eljack's] ability to perform basic work activities." (Tr. 19). Notably, Mr. Eljack offered no testimony at the hearing as to this impairment other than stating his "weight doesn't swing a lot" and that "it hasn't been a problem." (Tr. 37).

[4] Sedentary work involves lifting no more than 10 pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, and occasionally walking and standing. *See* 20 C.F.R. § 416.967(a).

# ANALYSIS

Mr. Eljack's identifies two "reversible errors" in the ALJ's decision. First, he contends that this case should be reversed because the ALJ did not properly consider his age in applying the grids. (Doc. 12 at 11-13). Second, he argues that the ALJ failed to fully develop the record because he did not order a consultative examination and did not consider all of Mr. Eljack's medical diagnoses. (*Id.* at 13-18).

**A.   The ALJ Did Not Properly Consider Mr. Eljack's Age in Applying The Grids.**

The grids require the ALJ to "consider [a claimant's] chronological age in combination with [his or her] residual functional capacity, education, and work experience" to determine vocational ability. 20 C.F.R. § 404.1563(a). However, in applying the grids, the Regulations provide that the Secretary "will not consider [a claimant's] ability to adjust to other work on the basis of [his or her] age alone"; instead, the Secretary is directed to "consider advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment." *Id.* The Regulations set out the following age categories for use in applying the grid rules: a "younger person" is under age 50; a "person approaching advanced age" falls within the bracket of 50 to 54 years of age; and a "person of advanced age" is age 55 or older. *Id.* § 404.1563(c), (d), and (e). The Regulations further provide:

> We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. <u>We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case</u>.

*Id.* § 404.1563(b) (emphasis added).

This court has recently opined that the proper measuring date for determining a claimant's age for application of the grids is the date the ALJ renders his decision. *See Overstreet v. Astrue*, No. 11-cv-1238, Doc. 15 at 9-10 (N.D. Ala. May 29, 2012) ("Accordingly, the court finds that the appropriate measuring date for a claimant's age for purposes of grid analysis is the date that the ALJ's decision is rendered." (citing *Crook v. Barnhart*, 244 F. Supp. 2d 1281, 1283 (N.D. Ala. 2003) and 3 Soc. Sec. Law & Prac. § 43:153 (2012)).

Here, Mr. Eljack was approximately three and one-half months shy of his fiftieth birthday on December 2, 2009, the date of the ALJ's written decision. If he had been 50 on the date of the decision, that would have placed him in the "person approaching advanced age" category and resulted in a finding of "disabled" under Rule 201.12 of the grids had the ALJ been applying the grids directly.[5] Though the

---

[5] In this case, because the ALJ found Mr. Eljack could not perform the entire range of exertional demands of sedentary work, he used the grids as a "framework" for his decision,

ALJ did not make an express finding in his grid analysis section (Tr. 22) as to the applicable age category, the ALJ noted earlier in his opinion that Mr. Eljack "was 47 years old, which is defined as a younger individual age 18–49, <u>on the date the [initial SSI] application was filed</u>." (Tr. 21) (emphasis added) (citing 20 C.F.R. § 416.963). Because the ALJ appeared to have measured Mr. Eljack's age from the date of his initial SSI application rather than the date of his decision, he wrongly applied the legal standards. If the ALJ had properly measured Mr. Eljack's age as of the date of his decision, which was more than eight months after he turned 49, he would have recognized the borderline age situation.[6]

The Eleventh Circuit has not addressed in depth the issue of borderline age situations in context of Social Security grid analysis. However, the following portion of a Social Security law treatise specific to the topic of borderline age situations is relevant and instructive to the case at hand:

---

consistent with the guidance of Rule 200.00(e).  (*See* Tr. 22).

[6] Based on this court's research, courts will generally recognize a borderline situation where a person whose age falls within six months or less of the next highest age category. *See, e.g., Pettway v. Astrue*, CIV.A 10-127-C, 2010 WL 3842365, at *3 (S.D. Ala. Sept. 27, 2010) ("Based on my review of the cases, the consensus among federal courts appears to be that six months from the older age category is the extent to which courts will recognize a borderline age situation." (citing cases)); *Harrison v. Astrue*, No. 3:09cv509/LAC/EMT, 2011 WL 1158750, at *9 n.14 (N.D. Fla. Feb. 24, 2011) (citing cases).  However, the court recognizes that "[i]n applying the Grids, the ALJ has the discretion to determine whether, under the circumstances of the particular case before him, a claimant's age should be considered borderline, and if so, which Grid Rule(s) should be applied" and that "[t]here are no fixed guidelines as to when a borderline situation exists." *Harrison*, 2011 WL 1158750, at *9 (citations omitted).

As in other cases, when a borderline age situation is presented in a disability case involving the application of the Medical-Vocational Guidelines, a factual determination must be made as to the appropriate age category to apply under the Guidelines. Accordingly, when a claimant falls within a borderline age group, the SSA may not mechanically apply age categories in relying on the Medical-Vocational Guidelines to determine whether the claimant is disabled; rather, the SSA must determine based on whatever evidence is available which of the categories on either side of the borderline best describes the claimant, and the SSA may apply that category in using the Guidelines. For instance, the determination that a claimant, who was 55 days short of her 55th birthday on the last day of her insured status, was not of "advanced age" which, if combined with her complained of ailments, would have rendered her disabled, was not the result of an ALJ's failure to conduct a proper analysis of a "borderline" case; review of the ALJ's decision indicated that the ALJ was unpersuaded by the claimant's allegations regarding the extent of her impairments and that many health problems arose after her insured status expired. In another case, although a claimant was within a few days of reaching age 45 at the time of the ALJ's decision, hers was not a borderline situation warranting application of the rule for the 45 to 49 age category because the record showed that the claimant completed eighth grade and read at a third grade level, and she said in her application that she could read and write, which meant that she was not illiterate. However, an ALJ was held to have impermissibly applied the age categories in a mechanical manner in considering a claim under the Guidelines when he failed to place a claimant in the category of claimants approaching advanced age, where the claimant was only 92 days short of age 50 when the ALJ's decision was rendered. Moreover, an ALJ had to clarify what age he used in considering the disability status of a 47-year-old claimant, who was 49 years old at the time of the decision, and elaborate on whether he had considered the claimant's borderline age and list the applicable reasons for his decision, so that the court, on judicial review, could determine whether the ALJ improperly mechanically applied the age categories when considering the claimant's age as a vocational factor.

An ALJ's improper refusal to place a claimant in the next higher age

category in a borderline situation constitutes harmless error where the Guideline rule applicable to an individual in the higher category, at the claimant's education, work experience, and residual functional capacity, would result in a finding of not disabled.

3 Soc. Sec. Law & Prac. § 43:153.

The Commissioner correctly observes that "simply because a claimant is close to an older age category does not mean the claimant should be mechanically placed in the older age category." (Doc. 10 at 5). However, in this case, the ALJ's opinion does not indicate that he even recognized the borderline age situation because he appeared to use the wrong measuring date for assessing Mr. Eljack's age. The Commissioner's brief focuses on Mr. Eljack's "fail[ure] to show why he should have been mechanically placed in the older age category," *id.*, while the relevant inquiry for the court to determine is whether the ALJ applied the correct legal standards. Here, it is clear that he did not. Because the court finds that the ALJ failed to properly consider Mr. Eljack's age when applying the grids, his decision is due to be remanded for further fact findings and assessment of the grids.

**B.     The ALJ Fully Developed The Record and His Decision Is Supported By Substantial Evidence.[7]**

Mr. Eljack also argues that the ALJ failed in his duty to fully develop the

---

[7] Because the court's decision to remand for further findings based on the age issue will not necessarily result in a reversal of benefits, the court also considers Mr. Eljack's additional arguments for reversal.

record because he did not order a consultative examination[8] and did not consider all of Mr. Eljack's medical diagnoses. More specifically,

> Plaintiff submits that the ALJ's failure to develop the record was so complete that not only did he fail to order a CE, but he did not even include many of the diagnoses that [Mr. Eljack] had[,] such as emphysema by x-ray, osteomyelitis of the ankle and foot, diabetic retinopathy, chronic venous stasis of the legs bilaterally and morbid obesity. The ALJ also overlooks the fact that there was a diagnosis in one of the medical records of paranoid schizophrenia. We do not know whether this diagnosis is accurate or not as it was never mentioned again and Dr. Allen did not mention it either.

(Doc. 9 at 16).

First, as to Mr. Eljack's contention that the ALJ failed to consider all medically determinable diagnoses, the court notes that the ALJ did, in fact, consider his diagnosis of osteomyelitis as a potentially disabling condition. (*See, e.g.,* Tr. 17 (recognizing that Mr. Eljack "was diagnosed with great toe osteomyelitis" when he presented to Cooper Green Hospital on December 4, 2007); *id.* at 18 ("On January 18, x-rays of [Mr. Eljack]'s right and left foot were obtained due to possible osteomyelitis.")). At the hearing, the ALJ specifically questioned Mr. Eljack about his diagnosis of osteomyelitis, but Mr. Eljack appeared to deny the accuracy of that

---

[8] Mr. Eljack explains that because "[t]he Social Security Administration did not send [Mr. Eljack] for a consultative examination (CE) . . . [Mr. Eljack]'s attorney sent him to Dr. Jeremy Allen, who treats patients at Cooper Green Hospital where [Mr. Eljack] is treated, and who had access to all of [Mr. Eljack]'s medical records (R. 260-266)." (Doc. 9 at 8). Dr. Allen examined Mr. Eljack on October 9, 2009. His examination findings and functional assessment, along with a medical source statement ("MSS"), are in the record at Tr. 260-66.

diagnosis. (*See* Tr. 39-41). Also, in the ALJ's opinion, he noted that Mr. Eljack's treating physician, after reviewing the x-rays taken on January 18, 2008, "did not see osteomyelitis in either foot." (Tr. 18).

Similarly, the ALJ expressly considered Mr. Eljack's diabetic medical diagnoses, his venous stasis of the legs, and morbid obesity, as his description of the medical records is replete with references to these conditions. (Tr. 17–19). Specific to his diagnosis of morbid obesity, Mr. Eljack admitted at the hearing that his weight "hasn't been a problem" for a "long time" his weight "doesn't swing a lot." (Tr. 37). Likewise, when the ALJ questioned Mr. Eljack about his diabetes at the hearing, he admitted that it's under fairly good control. (Tr. 42). Mr. Eljack testified that his blood sugar levels are "in control, but the blood pressure is out of control." (Tr. 42).

As to the emphysema and paranoid schizophrenia, although the ALJ did not expressly consider these two diagnoses in his opinion, the medical record does not indicate that these conditions have caused Mr. Eljack any functional limitations that would affect his vocational capacity. As to the "diagnosis in one of the medical records of paranoid schizophrenia" that Mr. Eljack references, he does not contend that the isolated diagnosis limits his functional capacity in any way. Moreover, Mr. Eljack admits, "[w]e do not know whether this diagnosis is accurate or not as it was never mentioned again and Dr. Allen did not mention it either." (Doc. 9 at 16).

Clearly, by Mr. Eljack's own admission, his medical record does not substantiate a medically determinable disabling impairment under the Social Security Act. Therefore, the court is not persuaded that the ALJ committed reversible error by failing to consider any of Mr. Eljack's medically determinable diagnoses.

Second, as to Mr. Eljack's suggestion that the ALJ failed to develop the record because he failed to order a consultative examination, the ALJ's RFC assessment was nevertheless supported by substantial evidence. Although the ALJ accorded little weight to the opinion of the consulting physician selected by Mr. Eljack, Dr. Allen (the only physician in the record who rendered a medical source statement ("MSS")), he properly articulated his reasons for doing so:

> Dr. Allen assessed that even in the most ideal of circumstances, [Mr. Eljack] would be unable to compete in the competitive work environment due to inability to ambulate, and that he would be unlikely to regain his ability to ambulate in a manner sufficient to regain his residual functional capacity. Dr. Allen's opinion, however, is given little weight as the undersigned did not make the same observations concerning [Mr. Eljack]'s gait and ambulation at the hearing. Moreover, [Mr. Eljack] had never treated with Dr. Allen prior to this examination, and he found the claimant to be more limited than the treating physicians at Cooper Green Hospital who have treated the claimant on numerous occasions. Further, the regulations provide that the final responsibility for deciding issues such as an individual[']s [RFC] and whether the [RFC] prevents an individual from working is reserved to the Commissioner. (20 CFR 404.1527(e) and 416.927(e)).

(Tr. 21).

An ALJ may not arbitrarily reject uncontroverted medical testimony. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982). The opinion of a treating physician as to the plaintiff's condition and the medical consequences thereof is entitled to deference, absent good cause. *See* 20 C.F.R. §§ 404.1527, 416.927; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."). Good cause exists when the treating physician's opinion is "not bolstered by the evidence, or where the evidence supports a contrary finding." *Lewis*, 125 F.3d at 1440. The good cause standard is also met when "the doctors' opinions [are] conclusory or inconsistent with their own medical records." *Id.*

Here, the ALJ concluded that Dr. Allen's one-time assessment of Mr. Eljack's condition and functional capabilities was due less weight because it was inconsistent with the opinions of Mr. Eljack's regular treating physicians at Cooper Green Hospital. Thus, the ALJ articulated good cause for discounting Dr. Allen's MSS. Moreover, the ALJ's decision to give less weight to Dr. Allen's opinion is supported by substantial evidence based on the inconsistencies he identified. The weight afforded a physician's conclusions regarding a claimant depends upon the extent to which statements are supported by clinical or laboratory findings and are consistent

with other evidence of record. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Crawford v. Comm'r*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). A doctor's opinion should be given controlling weight only if it is consistent "with other substantial evidence in [Plaintiff's] case record. . . ." 20 C.F.R. § 404.1527(d)(2). "Generally, the more consistent an opinion is with the record as a whole, the more weight [that opinion shall be accorded]." 20 C.F.R. § 404.1527(d)(4).

Thus, the court finds no error in the ALJ's reasoning and decision to discount the opinion of Dr. Allen. Mr. Eljack nevertheless contends that the ALJ should have ordered another consultative examiner to support his RFC assessment and fulfill his obligation to develop a full and fair record. (Doc. 9 at 15 (citing *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) and *Holiday v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988)). As this court has previously noted, neither the Eleventh Circuit nor this court has adopted a bright line test to determine whether the lack of a treating physician's MSS as to a claimant's functional ability calls for a remand. *Rose v. Astrue*, No. 11-cv-1186-VEH, Doc. 10 at 17-18 (N.D. Ala. Nov. 1, 2011). In some cases, a treating physician's MSS is necessary. *See, e.g., id.; Clemmons v. Astrue*, No. 3:06-CV-1058-VEH, slip op. at 11 (N.D. Ala. Jun. 11, 2007); *Coleman v. Barnhart*, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003). In others, it is not. *See, e.g.,*

*Green v. Social Security Administration.*, 223 Fed. App'x 915, 923 (11th Cir. 2007) (ALJ discounted a treating physician's opinion regarding claimant's functional abilities and limitations, but there otherwise remained substantial evidence to find the claimant not disabled); *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (lack of a treating physician's medical opinion did not invalidate the ALJ's RFC assessment because there existed substantial evidence, outside the objective medical evidence, supporting such); *Dudley v. Astrue*, No. 3:06-CV-1286-VEH (N.D. Ala. Apr. 24, 2007) (similar); *Cash v. Astrue*, No. 5:07-CV-0952-VEH (N.D. Ala. May 15, 2008) (similar). In sum, the outcome of these cases turns upon the sufficiency *vel non* of other evidence in the record that supports the ALJ's RFC determination even in the absence of a MSS from the claimant's treating physician. *Malone,* slip op. at 26.

Based on the particular facts and circumstances of this case, the court does not find that an additional MSS from one of Mr. Eljack's treating physicians was necessary to substantially support the ALJ's decision. This is so because substantial evidence documenting the non-impact of Mr. Eljack's medically determinable impairments independently supports the ALJ's RFC assessment. More specifically, the ALJ cited to multiple records from Mr. Eljacks regular treating physicians at Cooper Green Hospital that show that his primary conditions were "well controlled" and "healing well." (Tr. 21 (detailing at least six different treatment records that

Case 2:11-cv-01854-VEH   Document 11   Filed 06/22/12   Page 18 of 19

"show [Mr. Eljack]'s diabetes mellitus to be well controlled on his prescription medication regimen and his foot ulcers to be healing well.")). Because the uncontroverted records of Mr. Eljack's regular treating physicians consistently demonstrate that his medical conditions were improving and, generally, not causing any observable functional problems, any further MSS from Mr. Eljack's treating physicians would be unnecessary in this case.

Additionally, the ALJ's RFC assessment is further bolstered by his own credibility determinations based on his observations of Mr. Eljack's gait and ambulation at the hearing, which he detailed in his opinion. (*See* Tr. 20–21 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity.")).

Because the ALJ's RFC assessment is supported by substantial evidence, and because the ALJ applied the correct legal standards in discounting the opinion of Dr. Allen, the court does not find that the ALJ committed reversible error on the additional issues raised by Mr. Eljack.

18

## CONCLUSION

The Court finds that the ALJ's determination that Mr. Eljack is not disabled is not supported by substantial evidence because improper legal standards were applied to the grid analysis (specifically, concerning Mr. Eljack's age) in reaching his determination.[9]  Pursuant to the above analysis, the Commissioner's final decision is due to be remanded for further factual findings.  A separate order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this the 22nd day of June, 2012.

*[signature]*

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[9]  Other than the age issue, the ALJ's decision is substantially supported by the evidence and applies the correct legal standards.